IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

JASON JORDAN,

                         Petitioner,                    OPINION and ORDER

       v.
                                                        23-cv-57-jdp
UNITED STATES OF AMERICA,                               21-cr-70-jdp-2

                         Respondent.

---

Petitioner Jason Jordan, without counsel, seeks relief under 28 U.S.C. § 2255 following his guilty plea to one count of conspiracy to commit sex trafficking of children, in violation of 18 U.S.C. §§ 1591(a)(1) and 1594(c). Dkt. 1; *United States v. Jordan*, 21-cr-70-jdp-2, Dkt. 46 at 1. Jordan received a 48-month sentence. He's currently at a halfway house in Chicago, Illinois.

Jordan brings four claims: two due process claims based on allegations that Assistant United States Attorney Julie Suzanne Pfluger coerced him to plead guilty; and two claims of ineffective assistance of counsel against trial counsel, William R. Jones. I will combine Jordan's due process claims because they overlap and designate this claim as claim 1. I will designate Jordan's claims of ineffective assistance as claim 2 and claim 3. Jordan's claims are contradicted by the admissions that he made when he pleaded guilty, so I will deny the petition.

BACKGROUND

Jordan entered into a written plea agreement in which he agreed to plead guilty to one count of conspiracy to commit sex trafficking of children. Dkt. 27 in the '70 case. According to the written statement of the factual basis, the victim was a minor and would testify that:

Jordan transported her and rented hotel rooms for her at the direction of the primary trafficker, Adrian Edwards; Jordan was with her at a hotel for one night and posted an ad for commercial sex with her on an escort website that night; and she performed a commercial sex act that night and gave the money to Jordan. *Id.* ¶ 6. The factual basis also stated that law enforcement retrieved: an ad for the escort website that used Jordan's phone number and that showed the victim's pictures; records showing that the hotel room was rented in Jordan's name that night. *Id.* Further, the factual basis stated that: Jordan received drugs from the Edwards for his involvement in an implicit agreement to commit sex trafficking of the victim; and Jordan and Edwards were with the victim for an extended time and had a reasonable opportunity to observe her. *Id.*

Jordan acknowledged in the plea agreement that the government had made him no promises or guarantees regarding the sentence that would be imposed. *Id.* ¶ 7. Jordan also acknowledged that I might not accept any sentencing recommendations that the government could make, and that I could impose any sentence up to the statutory maximum, which was life imprisonment. *Id.* ¶¶ 2, 12. Jordan further acknowledged that: sentencing discussions formed no part of the plea agreement except agreements specifically set forth in it; and Jordan shouldn't rely on the possibility of a particular sentence based on sentencing discussions between Jones and the government if it wasn't memorialized in the agreement. *Id.* ¶ 11.

Jordan also acknowledged in the plea agreement that: he was entering into it freely and voluntarily; Jones had reviewed the entire agreement with him and advised him of the implications of the sentencing guidelines; and he had discussed all aspects of the case with Jones and was satisfied that his representation was effective. *Id.* at 6.

At the plea hearing, Jordan testified under oath that his decision-making was intact that and he understood what was going on around him. Dkt. 59 in the '70 case (transcript), at 6. Jordan also testified that he and Jones talked about the nature of the charge, its factual basis, whether he had any defenses, and the sentencing guidelines. *Id.* at 6–7. Jordan testified that he understood that the sentencing guidelines were advisory and that he could receive a sentence up to life imprisonment. *Id.* at 7, 12. Jordan acknowledged that, by pleading guilty, he was waiving several constitutional rights. *Id.* at 12–15. He testified that he had been able to read the plea agreement and understand it. *Id*. at 4. He testified that he had reviewed the factual basis and agreed that the government could prove those facts. *Id*. at 17.

I then reviewed the plea agreement to ensure that it was voluntary. Jordan testified that no one: made any other promises apart from those in the plea agreement to get him to plead guilty; threatened him or tried to force him to plead guilty; or told him that he would get a particular sentence in that case. *Id.* at 16. Although Jordan stated that he didn't know that the victim was a minor, he acknowledged that he had a reasonable opportunity to observe her when he spent the night with her. *Id.* I accepted Jordan's guilty plea, finding that: it was knowing and voluntary; Jordan entered into it after adequate consultation with Jones; a factual basis supported it; and Jordan understood the nature of the charge and consequences of pleading guilty. *Id.* at 19.

At the sentencing hearing, Jordan didn't object to the guideline sentencing range, which was 70 to 87 months' imprisonment. Dkt. 61 in the '70 case (transcript), at 6–7. The parties argued for an appropriate sentence. The government said that it charged Jordan with conspiracy even though the facts supported charging him with substantive trafficking of a minor because he was less culpable than Edwards and the substantive offense carried a 10-year mandatory

3

minimum. *Id.* at 7–8. The government recommended a sentence in the guidelines range. *Id.* at 14. Defense counsel Jones asked me to impose time-served. *See id.* at 13. Jones focused on mitigating Jordan's culpability, partly based on the assertion that Jordan didn't know the victim was a minor and expressed remorse when he found out. *See id.* at 18–26. Jordan also deflected responsibility during his allocution, partly based on the assertion that he lacked a "reason to believe [the victim] was under the age of 18." *Id.* at 34. I didn't find credible the idea that Jordan didn't realize that the victim was involved in prostitution, and I noted that Jordan clearly had a reasonable opportunity to observe her. *Id.* at 42–43. Ultimately, I imposed a 48-month sentence followed by a 10-year term of supervised release. *Id.* at 45–46.

Represented by Jones, Jordan filed a notice of appeal. Dkt. 51 in the '70 case. Jones withdrew on appeal, and a federal defender was appointed to represent Jordan. *United States v. Jordan*, No. 22-1227 (7th Cir.), Dkt. 9. Assistant Federal Defender Daniel J. Hillis moved to dismiss the appeal with prejudice, and the motion was granted. Dkt. 11 and Dkt. 12 in the '1227 case.

Jordan timely filed his § 2255 petition. Dkt. 1. I required Jordan to show cause why the petition shouldn't be dismissed as procedurally defaulted. After reviewing his response, I ordered the government to respond to the petition. Dkt. 4. The government responded. Dkt. 5. Jordan filed a reply and a supplemental reply. Dkt. 6 and Dkt. 7.

## ANALYSIS

### A. Claim 1

Jordan contends that his guilty plea was involuntary because Pfluger: (1) promised him a specific sentence of 24 months' imprisonment and five years' supervised release to get him

to plead guilty; and (2) told him that she would charge him with the substantive offense of trafficking a minor, which carried a 10-year mandatory minimum, if he didn't plead guilty. *See* Dkt. 1 at 5–6; Dkt. 6 at 6–7.

A plea agreement comports with due process "if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *Hays v. United States*, 397 F.3d 564, 570 (7th Cir. 2005). When a petitioner collaterally attacks the validity of his guilty plea, his statements at a plea colloquy generally bind him. "[T]he representations of the defendant, his lawyer, and the prosecutor at such a hearing, as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977). "Solemn declarations in open court carry a strong presumption of verity." *Id.* at 74; *see also United States v. Stewart*, 198 F.3d 984, 987 (7th Cir. 1999) ("A defendant has no legal entitlement to benefit by contradicting himself under oath. Thus when the judge credits the defendant's statements in open court, the game is over."). Other evidence in the record may support a finding that the petitioner's "plea agreement was voluntary and intelligent." *See Hays*, 397 F.3d at 570.

The record described in the background section establishes that Jordan's guilty plea was knowing, voluntary, and intelligent. Jordan acknowledged in the plea agreement that the government hadn't made him any promises regarding the sentence that would be imposed, and that he shouldn't rely on the possibility of a particular sentence based on sentencing discussions between the government and Jones except those in the agreement. Jordan made materially identical representations at the plea hearing. Furthermore, Jordan acknowledged in the plea agreement that he was entering into it freely and voluntarily, and he stated at the plea hearing that no one had threatened him or tried to force him to plead guilty. I found among other

things that Jordan's plea was knowing and voluntary, and that he understood the nature of the charge and consequences of pleading guilty. Jordan's bare allegations now that Pfluger promised him a specific sentence don't overcome the presumption that his contrary prior statements were truthful.

Jordan also alleges that Pfluger told him that if he didn't plead guilty she would charge him with the substantive offense of trafficking a minor, which carried a 10-year mandatory minimum. But the plea agreement's factual basis stated that Jordan played a hands-on role in the trafficking of the victim, and I found at sentencing that he "stepped up and really took the role of the primarily trafficker that day." Dkt. 61 in the '70 case, at 42. So even if Pfluger made this statement, she only "openly presented [Jordan] with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution," which doesn't violate due process. *See Bordenkircher v. Hayes*, 434 U.S. 357, 365 (1978). Claim 1 lacks merit.

**B. Claim 2**

Jordan contends that Jones provided ineffective assistance by: (1) failing to adequately review the plea agreement with him, partly because Jones presented it to him 15 minutes before the deadline to sign it; (2) advising Jordan to say the right things at the plea and sentencing hearings to ensure that I accepted his guilty plea and that he received the benefit of Pfluger's promise. *See* Dkt. 1 at 8; Dkt. 6 at 4, 8.

Claims of ineffective assistance of counsel are governed by the two-part test in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish that Jones provided ineffective assistance, Jordan must show that Jones's performance was deficient and that the deficient performance prejudiced his defense. *Id.* at 687. To prove deficient performance, Jordan must show that Jones's performance "fell below an objective standard of reasonableness" as measured

by prevailing professional norms. *Id.* at 688. To prove prejudice, Jordan must show "a reasonable probability that, but for [Jones's] unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

*Strickland* "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Lafler v. Cooper*, 566 U.S. 156, 162–63 (2012). Because Jordan alleges that Jones's deficient performance "led to the improvident acceptance of a guilty plea," he must "show that there is a reasonable probability that, but for [Jones's] errors," he "would not have pleaded guilty and would have insisted on going to trial." *Id.* at 163. Conclusory claims of ineffective assistance don't satisfy either *Strickland* prong. *See* 466 U.S. at 690; *Galbraith v. United States*, 313 F.3d 1001, 1008 (7th Cir. 2002); *United States v. Farr*, 297 F.3d 651, 658 (7th Cir. 2002).

Claim 2 is contradicted by the record. Jordan acknowledged in the plea agreement that Jones reviewed the "entire agreement" and discussed "all aspects" of the case with him, and that he was satisfied with Jones's representation. Dkt. 27 in the '70 case, at 6. As set forth above, Jordan made similar representations at the plea hearing. Jones also stated at the plea hearing that he spoke with Jordan about the charge he faced, the penalties that could result, and whether he had any defenses. Dkt. 59 in the '70 case, at 3. Both Jones and Pfluger stated that the plea agreement represented the entire agreement between the parties. *Id.* at 15–16. And I similarly found that Jordan entered into the plea agreement after adequate consultation with Jones. The record contradicts Jordan's bare allegation that Jones didn't adequately review the plea agreement with him.

Jordan also faults Jones for telling him to play along at the plea and sentencing hearings to get the benefit of Pfluger's promise of a 24-month sentence. As my analysis of claim 1 shows, the record contradicts Jordan's bare allegations that Pfluger made this promise. By the same

7

token, the record contradicts Jordan's vague description of Jones's shortcomings. Claim 2 lacks merit.

## C. Claim 3

Jordan contends that Jones provided ineffective assistance by failing to: (1) review all the evidence with Jordan; (2) explain the elements of the offense; and (3) explain that the government would have to prove a more serious charge if he didn't plead guilty to a lesser offense. Dkt. 1 at 4; Dkt. 6 at 2–3. Claim 3 fails for the same basic reasons as claim 2. Jordan represented that Jones discussed all aspects of the case with him, including the nature of the charge, the factual basis of the charge, and whether Jordan had any defenses. Also, no evidence supports Jordan's allegation that the government would have to prove a more serious charge if he didn't plead guilty to conspiracy. The government still could have prosecuted Jordan for conspiracy to commit sex trafficking if he didn't plead guilty to that offense. *Cf.* Dkt. 61 in the '70 case, at 7 (Pfluger's stating that the government charged Jordan with conspiracy because he wasn't as culpable as Edwards). Claim 3 lacks merit.

In sum, I will deny the petition because Jordan's claims lack merit. I will not hold an evidentiary hearing because "the [petition] and the files and records of the case conclusively show that [Jordan] is entitled to no relief." *See* 28 U.S.C. § 2255(b).

Because Jordan seeks relief under § 2255, he may appeal this order only if he obtains a certificate of appealability. I may issue a certificate of appealability only if Jordan makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To obtain a certificate of appealability, Jordan must "demonstrate that reasonable jurists would find [my] assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Jordan hasn't made this showing, so I will deny a certificate of

appealability. Jordan may seek a certificate from the court of appeals under Federal Rule of

Appellate Procedure 22.

ORDER

IT IS ORDERED that:

1.  Jordan's petition to vacate, Dkt. 1, is DENIED, and a certificate of appealability is
    DENIED.

2.  The clerk of court is directed to enter judgment and close the case.

Entered December 16, 2024.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge